UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEMETRIUS WILLIAMS,
and JOHN K. PATTERSON,

                    Plaintiffs,
                                            Case No. 19-cv-56-pp

         v.

ERIK  H. MICHALSEN, MICHAEL A. POWELL,
and WAUKESHA COUNTY,

                    Defendants.

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS
(DKT. NO. 10), DISMISSING PLAINTIFFS' FOURTH AMENDMENT CLAIM,
DISMISSING DEFENDANT WAUKESHA COUNTY AND ALLOWING
PLAINTIFFS TO FILE AN AMENDED COMPLAINT**

The plaintiffs, two African American pastors, filed this complaint "to redress the racial profiling" by the defendants, which they allege violated their civil rights under the Fourth and Fourteenth Amendments. Dkt. No. 1. The plaintiffs assert that they were returning home from a fishing trip when they experienced a flat tire on their boat trailer. They had pulled over to wait for a tow truck when two white officers pulled up with squad lights activated. One of the officers approached the vehicle and allegedly asked about guns and drugs and demanded to see the plaintiffs' licenses; the plaintiffs complied. The plaintiffs assert they were treated differently than a white woman in the same circumstance.

1

The defendants filed a motion to dismiss under Rule 12(b)(6), arguing that the plaintiffs have failed to state a claim under the Fourth and Fourteenth Amendments. Dkt. No. 11. The defendants maintain that even if what they did constituted a stop, or seizure, under the Fourth Amendment, they did not need reasonable suspicion because they were engaged in a *bona fide* community caretaker function. The defendants also argue that they are entitled to qualified immunity, and defendant Waukesha County seeks dismissal because the plaintiffs have not alleged a substantive claim against it.

After the parties briefed the motion, the plaintiffs filed a letter recapping the facts and supplementing the record with additional authority from various courts across the United States.[1] Dkt. Nos. 30-37. The defendants responded with their own letter brief. Dkt. No. 38. The court will deny the defendants' motion to dismiss as to the Fourteenth Amendment claim, and will grant the motion as to the Fourth Amendment claim but give the plaintiffs leave to amend.

## I. Legal Standard Governing a Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain a short and plain statement showing that the plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), while including "enough facts to state a claim for relief that is

---

[1] None of the cases the plaintiffs cited were from the Seventh Circuit or courts within the Seventh Circuit; many were from state courts. None of that authority is binding, and only authority from other federal courts of appeal is persuasive.

plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). The allegations in the complaint must rise above the speculative level. <u>Twombly</u>, 550 U.S. at 555. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. <u>Price v. Bd. of Educ. of City of Chi.</u>, 755 F3d 605, 607 (7th Cir. 2014).

## II. Complaint

The plaintiffs allege that the court has jurisdiction under 28 U.S.C. §§1331 and 1343(a)(3) and (4). Dkt. No. 1 at ¶2. Venue is proper under 28 U.S.C. §1391(b)(2). <u>Id.</u> at ¶3.

Plaintiffs Demetrius Williams and John K. Patterson are African American pastors living in Milwaukee. <u>Id.</u> at ¶¶4, 5. Williams leads Community Baptist Church of Greater Milwaukee. <u>Id.</u> at ¶4. He holds a doctorate in theology from Harvard Divinity School and has taught at Tulane University, Marquette University and the University of Wisconsin-Milwaukee. <u>Id.</u> Patterson leads Mt. Olive Baptist Church in Milwaukee. <u>Id.</u> Patterson is a graduate of Cardinal Stritch University and has a master's degree in religious studies from Trinity Evangelical Divinity University in Illinois. <u>Id.</u>

Defendants Erik H. Michalsen and Michael A. Powell are white men employed as sheriff's deputies by Waukesha County, Wisconsin. <u>Id.</u> at ¶¶6, 7. Powell is Michalsen's field training officer. <u>Id.</u> at ¶7. Defendant Waukesha

3

County is "a municipal entity responsible for the training, supervision and discipline of sheriff's deputies; adopting, implementing and enforcing policies and practices; and ensuring that the treatment of people complies with the United States Constitution and other federal, state and local laws." Id. at ¶8.

On May 1, 2018, the plaintiffs were returning to Milwaukee after a successful fishing trip to the Rock River in Jefferson County. Id. at ¶¶ 9, 10. The plaintiffs do not indicate the time of day, but note that the fish were in the cooler for dinner later. Id. at ¶9. The plaintiffs drove eastbound on Interstate 94 through Waukesha County in a Chevy Silverado pulling a boat trailer. Id. at ¶10. They noticed the tire on the boat trailer had a flat and pulled over to the side of the road. Id. at ¶11. After calling the insurance company for roadside assistance, the plaintiffs waited for the tow truck to arrive; they were told it would arrive in thirty to forty minutes. Id.

While the plaintiffs were waiting, the individual defendants pulled up behind the plaintiffs' disabled vehicle in their squad car with their lights activated. Id. at ¶12. Michalsen—a probationary deputy—got out of the squad car and approached Patterson, who was in the driver's seat. Id. at ¶¶12, 13. The plaintiffs explained that they were pulled over because of a flat tire and that a tow truck would arrive soon. Id. at ¶14. Waukesha County policy Number 6.10 requires deputies to stop for all disabled vehicles unless a courtesy tag has been affixed to the vehicle or exigent circumstances dictate otherwise. Id. at ¶15. That same policy provides that a vehicle that is not a

hazard and does not interfere with the flow of traffic may remain on the side of the road for 48 hours or more. Id. at ¶16.

Rather than treating the incident as one involving a disabled vehicle, Michalsen treated it as a stop under Waukesha County policy number 6.07; the plaintiffs allege that Powell deliberately failed to intervene. Id. at ¶17. Michalsen asked the plaintiffs whether they had any guns or drugs. Id. at ¶18. The plaintiffs told Michalsen that they were pastors, that they didn't have any guns or drugs and that they were waiting for a tow truck. Id. Michalsen "demanded" to see the plaintiffs' driver's licenses. Id. at ¶19. When Williams (who was sitting in the passenger seat) asked why Michalsen needed that information, Michalsen walked around and approached Williams. Id. Michalsen again demanded the plaintiffs' driver's licenses, and the "[p]laintiffs complied." Id.

Michalsen ran warrant checks; there were no warrants. Id. at ¶20. The plaintiffs allege that throughout this time, Michalsen and Powell knew the plaintiffs were legally pulled over because of a flat tire and that the vehicle posed no hazard. Id. at ¶21. The plaintiffs allege that Michalsen and Powell knew they lacked reasonable suspicion to stop the plaintiffs. Id. at ¶22.

The plaintiffs allege this would not have happened if they were white. Id. at ¶23. The complaint alleges that on some unspecified date and time, but prior to the plaintiffs' incident, Susan Herro, a white woman, was stranded off Interstate 94 and Highway 67 in Waukesha County when a deputy arrived. Id. at ¶24. The plaintiffs allege that the deputy did not stop Herro, did not ask

5

about guns or drugs, did not ask for her license and did not run a warrant check. Id.

The plaintiffs allege violations of the Fourteenth Amendment Equal Protection Clause and the Fourth Amendment, through 42 U.S.C. §1983. Regarding their Fourteenth Amendment claim, the plaintiffs allege that the officers treated the encounter as a stop rather than a disabled vehicle because of the plaintiffs' race. Id. at ¶35. They allege that this behavior infringed their "clearly established constitutional right to enjoy the equal protection of the laws and to be free from intentional discrimination in the form of arbitrary and irrational treatment that differs from the treatment of similarly situated individuals." Id. at ¶37. They assert that their race was a motivating factor in the individual defendants' conduct, and that the individual defendants treated them less favorably than their similarly-situated non-African-American counterparts. Id. at ¶¶39, 41.

In the Fourth Amendment claim, the plaintiffs allege that the defendants unlawfully transformed a disabled vehicle encounter into a stop and then extended the stop by questioning the plaintiffs about guns and drugs, demanding their licenses and performing the warrants checks. Id. at ¶48. They assert that the individual defendants lacked reasonable suspicion to treat the encounter as a stop. Id. at ¶49.

## III. Analysis

To proceed under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the

United States; and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980).

A.     Equal Protection Claim

Count One alleges that the defendants violated the Equal Protection Clause of the Fourteenth Amendment, which prohibits the state from denying citizens equal protection of the laws. It does not appear that the plaintiffs are alleging that the state classified them based on their race—the type of classification that would invoke strict scrutiny. See Isabella A. by David A. v. Arrowhead Union High School Dist., 323 F. Supp. 3d 1052, 1063 (E.D. Wis. 2018). It appears instead that the plaintiffs are alleging what is known as a "class-of-one" equal protection claim; "'[t]he classic class-of-one claim is illustrated when a public official, with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.'" Frederickson v. Landeros, 943 F.3d 1054, 1060 (7th Cir. 2019) (quoting Swanson v. City of Chetek, 719 F.3d 780, 784 (7th Cir. 2013)). "In 2000 the Supreme Court held that it recognizes 'successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Id. (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

7

In determining whether the plaintiffs have stated sufficient facts to allow them to proceed on a Fourteenth Amendment class-of-one claim, the court asks whether the plaintiffs have adequately alleged that the two individual defendants intentionally discriminated against them without any rational basis for the differential treatment. Id. The plaintiffs have alleged that they were treated differently than a white citizen because of their race. According to the plaintiffs, the individual defendants treated their encounter with the plaintiffs as a Fourth Amendment-style law enforcement stop—demanding their licenses, asking about guns and drugs and conducting a warrants check. They also have alleged that "a deputy"—it isn't clear if that deputy was one of the two defendants—came upon a white woman stopped under similar circumstances on some unidentified date prior to the plaintiffs' incident at some unidentified time, but did not treat that encounter as a stop, did not demand her license, run a warrant check or ask about guns and drugs. These allegations are sufficient, at the pleading stage, to state a class-of-one equal protection claim.

It is possible that the plaintiffs also intend to make a claim of racial profiling, another subset of equal protection claims. "Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause." Sow v. Fortville Police Dep't, 636 F.3d 293, 303 (7th Cir. 2011) (citing Chavez v. Ill. State Police, 251 F.3d 612, 635 (7th Cir. 2001)). To prove a claim of racial profiling, a plaintiff must show that the defendants were motivated by a discriminatory purpose and that their conduct had a discriminatory effect. Id. The plaintiffs must show that they are "members of a protected class, that they

8

are otherwise similarly situated to members of the unprotected class, and that plaintiffs were treated differently from members of the unprotected class." Chavez, 251 F.3d at 636.

The plaintiffs have alleged that they are members of a protected class—African-Americans. They have alleged that they were otherwise similarly situated to Susan Herro, who was not a member of the protected class. They have alleged that they were treated differently than Susan Herro. They have alleged that the defendants were motivated by a discriminatory purpose in their treatment of the plaintiffs, and that the defendants' actions had a discriminatory effect.

Admittedly, the complaint is thin on some facts. Who was the deputy involved in the Herro encounter? How long before the plaintiffs' incident did the Herro encounter occur? What were the circumstances under which Herro was stopped at the roadside? Are the plaintiffs alleging that these individual defendants have engaged in a pattern of treating disabled vehicle stops involving persons of color differently than they do disabled vehicle stops involving white people? Did the defendants in this case say anything about the plaintiffs' race? While the plaintiffs do not have to plead every single fact at their disposal, more information likely may head off or reduce the scope of future defense motions. But for the purposes of this motion, the plaintiffs have stated enough to proceed on an equal protection claim—at the very least, a class-of-one claim.

9

The court notes that the defendants have argued that because the plaintiffs weren't seized or deprived of their liberty, the court must dismiss their equal protection claim. The court doesn't understand this argument. If the defendants treated the plaintiffs differently for no other reason than race or racial animus, they violated the plaintiffs' Fourteenth Amendment equal protection rights regardless of whether they seized the plaintiffs or deprived them of their liberty. As the court speculated at the hearing, maybe the defendants mean to argue that the plaintiffs cannot prove damages. That has to do with injury, not with whether the plaintiffs were seized or deprived of their liberty.

B.     Seizure Under the Fourth Amendment

1.     *Failure to state a Fourth Amendment Claim*

As the court stated at the hearing, however, the plaintiffs' choice to include a Fourth Amendment cause of action is an odd one. Most case law discussing Fourth Amendment claims occurs in the context of arrests and detentions—false arrest claims, malicious prosecution claims. The plaintiffs do not allege that they were arrested or prosecuted, nor do they allege that they were searched.[2] The Supreme Court has held that "[t]he Constitutional basis for objecting to intentional discriminatory application of laws is the Equal

---

[2] During the hearing, counsel for the plaintiffs indicated that the plaintiffs viewed the fact that the defendants conducted a warrant check as a search. The court expresses no opinion about whether that is true, noting only that the plaintiffs did not allege this in the complaint.

Protection Clause, not the Fourth Amendment." Whren v. United States, 517 U.S. 806, 812-813 (1996).

The defendants argue that the plaintiffs have failed to allege a seizure under the Fourth Amendment. They assert that stopping for a disabled vehicle—with no other coercive activity—is a consensual encounter that does not give rise to a constitutional violation. Dkt. No. 11 at 5. The defendants ask the court to look at the totality of the circumstances and find, as a matter of law, that the plaintiffs cannot prevail on a Fourth Amendment claim.

The plaintiffs raised their Fourth Amendment claim through §1983. Dkt. No. 10 at 2. The Seventh Circuit has explained that to make a claim under §1983 for an unreasonable seizure in violation of the Fourth Amendment, a plaintiff must allege that the defendants' conduct (1) constituted a seizure and (2) that the seizure was unreasonable. Beilanski v. Cty. of Kane, 550 F.3d 632, 637 (7th Cir. 2008). The Supreme Court defines a seizure as the intentional limitation of a person's freedom of movement. Id.; see also Cty. of Sacramento v. Lewis, 523 U.S. 833, 834 (1998). Not every police encounter implicates the Fourth Amendment. United States v. Holly, 940 F.3d 995, 1000 (7th Cir. 2019). A seizure occurs when, from all of the circumstances surrounding the incident, a reasonable person in the situation would not feel free to ignore the police and go about his business. Id.

The plaintiffs argue that there are only two types of permissible seizures: a stop based reasonable suspicion (of the type discussed in Terry v. Ohio, 392 U.S. 1 (1968)) or an arrest based on probable cause. Dkt. No. 20 at 8. They

11

argue that without reasonable suspicion or probable cause to believe that the plaintiffs were engaged in criminal activity, any "stop" or "seizure" of the plaintiffs violated the Fourth Amendment. Id. at 8-9. That argument is not helpful, because the real question presented by the complaint is whether what the defendants did constituted a "stop" or "seizure."

The plaintiffs have acknowledged that Waukesha County's disabled vehicle policy (no. 6.10) provides that deputies must stop for all disabled vehicles unless a courtesy tag has been affixed to the vehicle or exigent circumstances dictate otherwise. Dkt. No. 1 at ¶10. The plaintiffs state that they aren't criticizing the defendants for stopping when the defendants saw the plaintiffs pulled over on the side of the road. Dkt. No. 20 at 22. Rather, the plaintiffs challenge what the defendants did next—acting "as though they had reasonable suspicion" that the plaintiffs had engaged in criminal activity by asking for the plaintiffs' licenses, asking questions about guns and drugs and running warrant checks. Id. at 22-23. But they do not cite any cases supporting their claim that asking for someone's license, or asking someone a question about guns or drugs or running a warrant check constitutes a "stop" or "seizure," particularly in the context of a *civil* cause of action.

The test for whether a seizure occurred is an objective one. United States v. Lopez, 907 F.3d 472, 487 (7th Cir. 2018). In Hall v. City of Chi., 953 F.3d 945, 952 (7th Cir. 2020), the Seventh Circuit emphasized that subjective beliefs about whether the individual felt free to leave are irrelevant to the objective inquiry. Consistent with this objective analysis, the Supreme Court has

identified several factors to consider, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Mendenhall, 446 U.S. 544, 554 (1980). The Seventh Circuit provided a non-exhaustive list to help determine whether an encounter is consensual:

- where the interaction took place, including whether it was in public;
- how many police officers were present;
- the extent to which the police presence was threatening;
- whether the officers made any show of weapons or physical force;
- the officers' language and tone;
- whether the police suggested the defendant was suspected of a crime; and
- whether officers told the defendant he was free to leave.

Holly, 940 F.3d at 1000 (citing United States v. Shields, 789 F.3d 733, 743 (7th Cir. 2015)).

The plaintiffs argue that the totality of the circumstances gave rise to a seizure—Michalsen demanded the plaintiffs' licenses, ran warrants checks and asked about guns and drugs even though he knew that the plaintiffs were pastors who had pulled over because of a flat tire. But they have not addressed the specific Mendenhall factors, even if those factors are relevant to the question of whether a seizure occurred in the *civil* context. And a review of those factors does not support the plaintiffs' claim that they were "seized" without their consent.

The plaintiffs have alleged that the incident took place on the side of the interstate—out in public, perhaps in broad daylight (they don't say what time

the events occurred). They allege that a single officer approached their car, while another stayed in the squad car. They make no allegation that the officer acted in a threatening manner (although they state that he "demanded" their licenses, and did so again after being questioned as to why he needed them). The plaintiffs have not alleged that either officer drew a weapon or showed force. They have not alleged that the officers suggested they were suspected of having committed crimes. They have not described the officers' language or tone. They have not alleged that the officers told them that they were free to leave, but given the circumstances—the fact that the plaintiffs *couldn't* leave because the trailer tire was flat—it is not clear why the officers would tell them that. And the officers left before the plaintiffs did.

The Seventh Circuit's recent decision in <u>Holly</u> distinguishes a consensual encounter from a seizure. Two officers, in uniform, were patrolling a public housing project on Chicago's south side when they saw the defendant walk on a sidewalk inside a courtyard around 4 p.m. <u>Id.</u> at 998. As the defendant neared the police car, the defendant made eye contact and turned sharply in the other direction. <u>Id.</u> One of the officers jogged after him, identified himself, and asked a single question: "do you have drugs or a gun?" <u>Id.</u> Neither officer drew their guns or touched the defendant before they placed the defendant under arrest. <u>Id.</u> The Seventh Circuit conceded that the officers were in uniform, approached the defendant and asked about a gun, but emphasized that the officers did not block the defendant's path or draw their weapons and their tone did not compel an answer. <u>Id.</u> at 1001. According to the Seventh

14

Circuit, this was not a seizure but rather a consensual encounter. Id. The court reached that conclusion on a fully developed record—the Seventh Circuit commented that the district court had "proceeded carefully by holding a hearing, considering the competing testimony, assessing credibility and ultimately finding that Officer Caulfield approached Holly and asked him a question—nothing more." Id.

The court is mindful that at the pleading stage, the court must draw all reasonable inferences in favor of the plaintiffs. United States ex rel. Berkowitz v. Automation Aids, Inc., 896 F.3d 834, 839 (7th Cir. 2018). But the plaintiffs have pointed to no authority that provides a civil cause of action for unconstitutional stop or seizure in a case where officers asked for a license, asked about guns and drugs or ran a warrant check. The court will give the plaintiffs the opportunity to amend their complaint, to allow them to try to state a civil claim under the Fourth Amendment.

2. *Community Caretaker Function*

The defendants argued that even if what they did constituted a "stop" or a "seizure," it was constitutionally justified because they were exercising their community caretaker function in making sure that the plaintiffs did not need assistance. The plaintiffs respond that the community caretaker argument is pretextual—they allege that the defendants were not performing a community caretaker function when they ran warrant checks on two pastors with a flat tire.

15

The United States Supreme Court first described the community caretaker function in Cady v. Dombrowski, where officers engaged in a warrantless search of a vehicle following a one-car accident. 413 U.S. 433, 441 (1973). The officers conducted the warrantless search because they knew the intoxicated driver of the vehicle, a Chicago police officer, was required by regulation to carry his service revolver at all times. Id. at 436. The officers did not find the revolver on the defendant, in the front seat or glove compartment. Id. The officers had the vehicle towed following the accident, and one of the officers opened the locked trunk in the garage where the vehicle had been towed. Id. at 437. The officer discovered various items in the trunk, including spots of moist blood, and questioned the driver of the vehicle. Id. He then directed the officer to a body on his brother's farm. Id. The Supreme Court found the search was not unreasonable for two reasons: (1) the officers had a form of custody over the vehicle because of the accident and it constituted a nuisance if left on the highway; and (2) the officers were protecting the public "from the possibility that a revolver could fall into untrained or perhaps malicious hands." Id. at 443.

The court concluded that the search of a vehicle not in the custody or on the premises of its owner was a legitimate exercise of the police force's community caretaking function. Id. at 447-48. The Supreme Court acknowledged that situations where officers are investigating things such as accidents are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. Id. at 441. In such a

16

case, the police may conduct a seizure without probable cause or reasonable suspicion. Id.; see also State v. Truax, 318 Wis. 2d 113, 119 (Ct. App. 2009).

Courts apply a three-part test in determining whether the community caretaker function applies: (1) they ask whether a seizure occurred; (2) they ask whether the defendant engaged in a *bona fide* community caretaker activity; and (3) they balance the public's need and interest and the privacy of the individual. State v. Anderson, 142 Wis.2d 162, 169 (Ct. App. 1987), affirmed after remand, 149 Wis. 2d 663 (Ct. App. 1989), rev'd on other grounds, 155 Wis.2d 77 (1990). The analysis is based on objective facts. Waukesha Cty. v. Meinhardt, 2001 WL 541127 (Ct. App. 2001). The third prong—the balancing test—requires consideration of the (1) public interest and the exigency of the situation; (2) the circumstances surrounding the seizure—time, location and degree of overt authority displayed; (3) whether an automobile was involved; and (4) the availability of alternatives to the type of intrusion that actually occurred. Anderson, 142 Wis. 2d at 169.

The defendants rely heavily on State v. Kramer, 315 Wis. 2d 414 (2009), in which the Wisconsin Supreme Court found a seizure to be reasonable under the community caretaker function. The officer in Kramer stopped his squad car behind the defendant's legally parked car and approached the driver's side window, saying something to the effect of "[c]an I help you with something?" or "[j]ust making sure no vehicle problems." Id. at 421. The Wisconsin Supreme Court assumed, solely for the sake of argument, that a seizure occurred when the officers pulled up behind a legally parked car with the lights activated. Id.

17

at 429. The court looked at the totality of the circumstances and found that the officers had an objectively reasonable basis for the acting in a community caretaker function. Id. at 433. When an "objectively reasonable basis for the community caretaker function is shown, that determination is not negated by the officer's subjective law enforcement concern." Id. The Supreme Court acknowledged that an officer will have law enforcement concerns any time there is a traffic encounter. Id. at 434. "To conclude otherwise would ignore the multifaceted nature of police work and force police officers to let down their guard and unnecessarily expose themselves to dangerous conditions." Id.

Turning to the balancing test, the Kramer court noted that the public has a substantial interest in ensuring that police assist motorists who may be stranded on the highway, after dark in an urban area, when help is not close at hand. Id. at 439. In considering the second factor, the Supreme Court found it hard to image the officer "displaying less overt authority, or acting less coercively, than he did in this case." Id. The third factor also weighed in favor of the caretaker function because walking up to the window to see if the driver needed assistance was the only reasonable approach. Id. Finally, the manner in which the officer approached the parked car was more reasonable than any alternative suggested. Id. at 440.

As the Kramer decision illustrates, the question of whether an officer conducting a seizure is engaging in a *bona fide* community caretaker function is fact-bound and specific. The Supreme Court drew its conclusions based on a full factual record. Based on the facts in this complaint, the court cannot

18

conclude that a stop or seizure occurred. Similarly, based on the limited facts before the court, it has no way of concluding, as a matter of law, that the defendants were engaging in a *bona fide* community caretaker function. That seems an argument better suited for summary judgment.

C.    Qualified Immunity

The defendants have argued that they are entitled to qualified immunity. Qualified immunity shields a public official from a suit for damages unless case law clearly puts him on notice that his action is unconstitutional. Campbell v. Kallas, 936 F.3d 536, 538 (7th Cir. 2019). At the beginning of this year, the Seventh Circuit explained qualified immunity as follows:

> A public official defendant is entitled to qualified immunity unless two disqualifying criteria are met. First, the evidence construed in the light most favorable to the plaintiff must support a finding that the defendant violated the plaintiff's constitutional right. Second, that right must have been clearly established at the time of the violation. *Stainback v. Dixon*, 569 F.3d 767, 770 (7th Cir. 2009). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix* [v. Luna], 136 S. Ct. [305,] at 308 (emphasis added).

Day v. Wooten, 947 F.3d 453, 460 (7th Cir. 2020).

There is no question that a citizen has a clearly-established right to be free from discrimination based on race, and the court has concluded that the plaintiffs have alleged sufficient facts to proceed on an equal protection claim. The defendants are not entitled to dismissal of that claim based on qualified immunity.

19

As to the Fourth Amendment claim, the court's conclusion that the plaintiffs have not stated sufficient facts to support such a claim is related to the defendants' argument that even if they have violated the plaintiffs' Fourth Amendment rights, the plaintiffs have not articulated a clearly established right. The Seventh Circuit's decision in <u>Day</u> is helpful in understanding the defendants' argument. The plaintiffs in <u>Day</u> sued on behalf of Terrell Day, who died while his hands were cuffed behind his back after he winded himself in a chase following an apparent shoplifting. <u>Id.</u> at 455. The Seventh Circuit acknowledged that an individual has a Fourth Amendment right to be free of unreasonable seizures of his person. <u>Id.</u> For the purposes of qualified immunity, however the court emphasized that the "clearly established right" must be more specifically articulated. <u>Id.</u> The Seventh Circuit concluded that the only right the plaintiff could assert would be the "right of an out-of-breath arrestee to not have his hands cuffed behind his back after he complains of difficulty breathing." <u>Id.</u> at 463. It found no Seventh Circuit precedent clearly establishing such a right. In the absence of existing precedent, the court concluded that the facts of <u>Day</u> did not present the "rare, obvious case" where the unlawfulness of the officer's conduct is sufficient clear." <u>Id.</u> (quoting <u>District of Columbia v. Wesby</u>, 138 S. Ct. 577, 590 (2018).

The plaintiffs argue that the law is clearly established that the deputies needed reasonable suspicion to compel the plaintiffs to produce their driver's licenses and to perform warrants checks. Dkt. No. 20 at 15. None of the cases cited by the plaintiffs articulate that right. Each of the cases the plaintiffs cite

arose in the criminal context where the officers were performing a law enforcement function, clearly conveying to the defendant that he or she was suspected of engaging in illegal activity or the target of an investigation. That is not the case here.

The plaintiffs have the burden of establishing that the law concerning the proffered right was clearly established at the time the challenged conduct occurred. Burritt v. Ditlefsen, 807 F.3d 239, 249 (7th Cir. 2015). The contours of the right must be sufficiently clear so that the officer would know that what he was doing clearly violated existing precedent. Chasensky v. Walker, 740 F.3d 1088, 1094 (7th Cir. 2014). The Supreme Court has explained that as qualified immunity has evolved, it provides ample protection to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Even if the plaintiffs amend their complaint to sufficiently allege a Fourth Amendment claim, they still may face dismissal if they cannot articulate a clearly established right sufficient to avoid a defense of qualified immunity.

D.    Waukesha County

The defendants correctly point out that the complaint makes no substantive allegations against Waukesha County. The plaintiffs responded that the county is a proper defendant under Wis. Stat. §895.46. Dkt. No. 20 at 25. Wis. Stat. 895.46 is an indemnification statute. It provides:

> If the defendant in any action or special proceeding is a public officer or employee and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employee and the jury or the

21

court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employee . . . in excess of any insurance applicable to the officer or employee shall be paid by the state or political subdivision of which the defendant is an officer or employee.

Wis. Stat. §895.46.

The plaintiff argues for over two pages about the fact that in *scope of employment* cases brought under §895.46, courts have held that acts of public officers trigger the indemnification requirement if the public officers were acting in service of their employer. Dkt. No. 20 at 25-27. This argument is irrelevant. The complaint does not allege a scope-of-employment action. The defendants have not argued that they were not employees of the county when the incident occurred. The court is mystified by this argument.

The question is whether the *county* is a proper defendant when the plaintiffs have not alleged any wrongdoing on behalf of the county. It is not. If the individual officers are found liable, the indemnity mandated by §895.46 will be triggered; the plaintiffs do not need to sue the county for that to happen. The plaintiffs may not name the county in the amended complaint unless they allege some wrongdoing by the *county*, as opposed to the individual defendants.

## IV. Conclusion

The court **DENIES** the defendants' motion to dismiss the Fourteenth Amendment equal protection claim. Dkt. No. 10.

The court **GRANTS** the defendants' motion to dismiss the Fourth Amendment claim, and **GRANTS** the defendants' motion to dismiss Waukesha County as a defendant. Dkt. No. 10.

The court **ORDERS** that the Fourth Amendment claim, and any claim against Waukesha County, are **DISMISSED without prejudice**.

The court **ORDERS** that if the plaintiffs wish to amend their complaint to try to state a Fourth Amendment claim, or to state a substantive claim against Waukesha County, they must file the amended complaint by the end of the day on **June 12, 2020**.

Dated in Milwaukee, Wisconsin this 21st day of April, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**